ORIGINAL

# In the United States Court of Federal Claims

No. 15-1381T
Filed October 13, 2017
NOT FOR PUBLICATION

FILED
OCT 13 2017
U.S. COURT OF FEDERAL CLAIMS

JERRY JOHN CZARNECKI, JR.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

*Pro se*; Summary Judgment, RCFC 56; Ordinary and Necessary Business Expense, Internal Revenue Code § 162; Treasury Regulations § 1.162-5.

*Jerry John Czarnecki*, Woodbridge, VA, plaintiff *pro se*.

*Jason S. Selmont*, Attorney of Record, *Blaine G. Saito*, Trial Attorney, *Mary M. Abate*, Assistant Chief, *David I. Pincus*, Chief, *David A. Hubbert*, Acting Assistant Attorney General, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I. INTRODUCTION

In this tax refund matter, plaintiff *pro se*, Jerry John Czarnecki, seeks to deduct certain educational expenses incurred in connection with researching and writing his doctoral thesis as an ordinary and necessary business expense, pursuant to Section 162 of the Internal Revenue Code and Treasury Regulations § 1.162-5. *See generally* Compl. The parties have filed cross-motions for summary judgment on the issue of whether plaintiff is entitled to deduct these expenses, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def. Mot.; Pl. Mot. For the reasons discussed below, the Court **GRANTS** the government's motion for summary judgment and **DENIES** plaintiff's cross-motion for summary judgment.

7017 1450 0000 1346 4278

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

Plaintiff is a professional engineer. Compl. at 17; Def. Mot. at 1. In 2010, plaintiff engaged in research and writing in connection with his doctoral thesis for a Ph.D. program in structural engineering at the Massachusetts Institute of Technology ("MIT"). Def. Mot. at 1. In this tax refund action, plaintiff seeks to deduct these educational expense as an ordinary and necessary business expenses, pursuant to Section 162 of the Internal Revenue Code ("I.R.C.") and Treasury Regulations § 1.162-5. *See generally* Compl.

#### 1. Plaintiff's Educational Background And Work History

The material facts in this tax refund case are undisputed. Plaintiff has studied and worked in the field of engineering for many years. Def. Mot. at 1. In 1994, plaintiff earned a Bachelor's of Science degree in engineering from Worcester Polytechnic Institute. Def. Mot. at 2; Def. Mot. at Ex. 1 at 16-17. Thereafter, plaintiff earned a Master's degree in applied mathematics from the University of Rochester in 1995. Def. Mot. at 2; Def. Ex. 1 at 17.

After obtaining his Master's degree in applied mathematics, plaintiff began his engineering career working at ITT Industries as a plant engineer in 1995. Def. Mot. at 3; Def. Ex. 1 at 8, 11. In 1996, plaintiff joined Gleason Corporation as a research engineer where he worked on the design and programming of machines to achieve certain gear tooth geometries. Def. Mot. at 3; Def. Ex. 1 at 8-9, 11-12. Plaintiff remained employed at Gleason Corporation until 1998. Def. Ex. 1 at 11-12.

In September 1998, plaintiff enrolled in a Ph.D. program in structural engineering within the civil environmental engineering department at MIT. Def. Mot. at 3; Def. Ex. 1 at 9, 17, 18, 38; Def. Ex. 2. After taking courses, sitting for his doctoral examinations, and presenting his

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl."); the government's motion for summary judgment ("Def. Mot."); the exhibits to the government's motion for summary judgment ("Def. Ex at __"); plaintiff's response and opposition to the government's motion for summary judgment and cross-motion for summary judgment ("Pl. Mot."); the government's response to plaintiff's cross-motion for summary judgment and reply ("Def. Resp."); and plaintiff's reply ("Pl. Reply"). Except where noted, the facts recited herein are undisputed.

dissertation research project, plaintiff moved to Los Alamos, New Mexico where he conducted doctoral research at the Los Alamos National Laboratory. Def. Mot. at 3; Def. Ex. 1 at 9, 12.

During the period 2001 to 2006, plaintiff worked as a research engineer at the Laboratory for Microsensor and Actuator Technology located in Berlin, Germany. Def. Mot. at 3; Def. Ex. 1 at 9, 13. In 2007, plaintiff returned to the United States and began work as a general engineer for the United States Navy (the "Navy"). Def. Mot. at 3; Def. Ex. 1 at 10, 13-14. In this capacity, plaintiff performed structural engineering work for submarine design for Naval Sea Systems Command. Def. Mot. at 3; Def. Ex. 1 at 14.

In 2008, plaintiff became a licensed professional engineer in the State of New York. Def. Mot. at 4-5; Def. Ex. 1 at 18. Thereafter, in 2009, plaintiff began work as an engineer at the Navy Surface Warfare Center located in Crane, Indiana. Def. Mot. at 3-4; Def. Ex. 1 at 10-11, 14. In this position, plaintiff focused on how batteries in submarines withstood shocks and vibrational disturbances when the batteries are mounted in a vehicle. Def. Ex. 1 at 14, 45-46.

In 2010, the Navy certified plaintiff as a Systems Engineer Level 3, which involves oversight of the design and manufacture of complex equipment and military hardware. Def. Ex. 1 at 19-20. During this period of time, plaintiff also conducted research and writing in connection with his doctoral thesis at MIT. Compl. at 1; Def. Mot. at 1. At the time, plaintiff was not licensed as a structural engineer. Def. Ex. 1 at 18-19, 34-35.

In 2011, plaintiff left his employment with the Navy and began working for the Institute for Defense Analyses as a research engineer. Def. Ex. 1 at 11, 15. Thereafter, in October 2014, plaintiff began working in his current position as an engineer at Bechtel Corporation. Def. Mot. at 4; Def. Ex. 1 at 11, 15. In 2014, plaintiff ceased work on his doctoral thesis without having obtained a degree. Def. Mot. at 4.

### 2. Plaintiff's 2010 Tax Return

Plaintiff timely filed his United States Individual Income Tax Return, Form 1040, for the 2010 tax year. Def. Mot. at 6. On April 9, 2014, plaintiff signed an Amended United States Individual Income Tax Return, Form 1040-X, for tax year 2010, claiming an entitlement to a tax refund of $8,712.00 as educational expenses related to required professional development. *Id.* at

6-7. On August 29, 2014, the Internal Revenue Service ("IRS") disallowed plaintiff's tax refund claim. *Id.* at 7.

**B. Procedural Background**

Plaintiff commenced this tax refund action on November 16, 2015. *See generally* Compl. On March 10, 2016, the government answered the complaint. *See generally* Answer.

On April 26, 2017, the government filed a motion for summary judgment, pursuant to RCFC 56. *See generally* Def. Mot. On May 19, 2017, plaintiff filed a response and opposition to the government's motion for summary judgment and a cross-motion for summary judgment, pursuant to RCFC 56. *See generally* Pl. Mot.

On June 28, 2017, the government filed a response and opposition to plaintiff's cross-motion for summary judgment and a reply in support of its motion for summary judgment. *See generally* Def. Reply. On July 17, 2017, plaintiff filed a reply in support of his cross-motion for summary judgment. *See generally* Pl. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

## III. STANDARDS OF REVIEW

**A. Jurisdiction And Tax Refund Claims**

Under the Tucker Act, the United States Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). The Tucker Act does not, however, create a substantive cause of action. Rather, a plaintiff must identify a separate source of substantive law that creates the right to money damages to come within the jurisdictional reach and the waiver of that act. *Fisher*, 402 F.3d at 1172 (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983); *United States v. Testan*, 424 U.S. 392, 398 (1976)).

I.R.C. § 7433(a), provides the money-mandating source of law for bringing a tax refund claim in this Court. *Dumont v. United States*, 85 Fed. Cl. 425, 427–28 (2009). And so, a taxpayer may bring an action in this Court to recover any internal revenue tax erroneously or

illegally assessed or collected, provided that the taxpayer first duly files a claim for a refund with the IRS. I.R.C. § 7422(a); *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008); *Dumont*, 85 Fed. Cl. at 427–28.

Although tax refund claims must originally be presented to the IRS, a tax refund suit is a *de novo* proceeding in which the taxpayer bears the burden of proving his or her case by a preponderance of the evidence.[2] *See Gingerich v. United States*, 77 Fed. Cl. 231, 240 (2007) (citations omitted); *Ebert v. United States*, 66 Fed. Cl. 287, 291 (2005); (citing *Cook v. United States*, 46 Fed. Cl. 110, 116 (2000)) (citations omitted). And so, to prevail in a tax refund case, the plaintiff must carry the burden of proof and provide evidence of an entitlement to a tax refund. *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Wells Fargo & Co. v. United States*, 91 Fed. Cl. 35, 75 (2010); *see Stobie Creek Invs. v. United States*, 82 Fed. Cl. 636, 663-64 (2008). "'[T]he plaintiff bears the burden of proof' with respect to each and every element of its claim." *Int'l Paper Co. v. United States*, 36 Fed. Cl. 313, 322 (1996).

**B. RCFC 56**

Pursuant to RCFC 56, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014). A dispute is "genuine" when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is "material" if it could "affect the outcome of the suit under the governing law." *Id.*

The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). And so, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

---

[2] This Court shares jurisdiction for tax matters with the United States Tax Court and with the regional federal courts. I.R.C. §§ 7441, 7482; 28 U.S.C. §§ 1346(a); 1491(a). "While decisions of the Tax Court [and other circuits] are not binding, the Court of Federal Claims 'will follow these decisions if the underlying rationale is persuasive.'" *Buser v. United States*, 85 Fed. Cl. 248, 264 n.16 (quoting *Southland Royalty Co. v. United States*, 22 Cl. Ct. 525, 530 n.15 (1991)).

In making a summary judgment determination, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004); *Agosto v. INS*, 436 U.S. 748, 756 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . ."). The Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). And so, when both parties move for summary judgment, '"the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."' *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

**C. I.R.C. § 162(a)**

The Internal Revenue Code does not deal specifically with the deductibility of educational expenses. *See generally* I.R.C. §§ 161-199. But, Section 162(a) of the I.R.C. provides generally that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" I.R.C. § 162(a). In contrast, Section 262 of the I.R.C. prohibits deductions for "personal" expenses. I.R.C. § 262.

Because the I.R.C. does not contain specific provisions regarding the deductibility of educational expenses, the tax "regulations synthesizing sections 162(a) and 262 in relation to educational expenses take on added significance." *Bodley v. Comm'r*, 56 T.C. 1357, 1359 (1971); *see also Burke W. Bradley, Jr.*, 54 T.C. 216 (1970). The relevant regulations provide that educational expenses are deductible if the education maintains or improves skills required by the individual in his employment, or other trade or business, or meets the express requirements of his employer. Treas. Reg. § 1.162-5(a). Specifically, the regulations provide that a taxpayer may deduct educational expenses as an ordinary and necessary business expense if the education:

> (1) Maintains or improves skills required by the individual in his employment or other trade or business, or
>
> (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.

Treas. Reg. § 1.162-5(a)(1)-(2).

The regulations also carve out an exception to this allowance when the education qualifies the taxpayer for a new trade or business and provides, in relevant part, that:

> (b) Nondeductible educational expenditures – (1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations.
>
> . . . .
>
> > (3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. . . .

Treas. Reg. § 1.162-5(b)(1), (3). And so, a taxpayer may not take a deduction for expenditures made by an individual for education which is part of a program of study being pursued by the taxpayer which will lead to qualifying him in a new trade or business. Treas. Reg. § 1.162-5(b)(3)(i). This is the case even though a taxpayer's studies may be required by the taxpayer's employer and the taxpayer does not intend to enter a new field of endeavor. *Bodley*, 56 T.C. at 1360.

In this regard, courts have recognized that the question of whether certain education qualifies a taxpayer for a new trade or business to be an objective inquiry. *See, e.g.*, *Vetrick v. Comm'r*, 628 F.2d 885, 886 (5th Cir. 1980). And so, courts have analyzed the tasks and activities that the taxpayer was able to perform before the education, in comparison to the tasks and activities that the taxpayer was qualified to perform afterward, to determine whether an

educational course qualifies the taxpayer for a new trade or business. *Id.* The taxpayer's subjective intent in undertaking the education, and whether the taxpayer actually becomes employed in a new trade or business, are not relevant to such an inquiry. *Id.*; *Burnstein v. Comm'r*, 66 T.C. 492, 495 (1976); *Bodley*, 56 T.C. at 1360.

### D. *Pro Se* Litigants

Lastly, in reviewing matters brought by *pro se* litigants, the Court applies the pleading requirements leniently. *Beriont v. GTE Labs., Inc.*, 535 F. App'x 919, 925-26 n.2 (Fed. Cir. 2013) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007)). When determining whether a complaint filed by a *pro se* plaintiff is sufficient to survive a motion to dismiss, the Court affords more leeway under the rules to *pro se* plaintiffs than to plaintiffs who are represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers."); *Matthews v. United States*, 750 F.3d 1320, 1322 (Fed. Cir. 2014). But, there "is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his pleading." *Lengen v. United States*, 100 Fed. Cl. 317, 328 (2011) (brackets existing; citations omitted). And so, while "a *pro se* plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, . . . the *pro se* plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)). Given this, the Court may excuse ambiguities, but not defects, in the complaint. *See Colbert v. United States*, 617 F. App'x 981, 983 (Fed. Cir. 2015).

## IV. LEGAL ANALYSIS

The parties have filed cross-motions for summary judgment on the issue of whether plaintiff is entitled to deduct the educational expenses that he incurred during the 2010 tax year as an ordinary and necessary business expense under Section 162 and Treasury Regulations § 1.162-5. *See* Pl. Mot.; Def. Mot. In its motion for summary judgment, the government argues that plaintiff's doctoral studies will lead to qualifying him for a new trade or business–namely, employment as a university professor or a licensed structural engineer–and that plaintiff cannot deduct these expenses as an ordinary and necessary business expense. Def. Mot. at 11-15. In his cross-motion for summary judgment, plaintiff counters that his doctoral studies maintained and

improved the skills required of him by his employer and that he is entitled to deduct these expenses as an ordinary and necessary business expense. Pl. Mot. at 2-3.

For the reasons discussed below, the undisputed material facts in this case demonstrate that plaintiff has not shown that his doctoral studies during tax year 2010 maintained or improved the skills required of him by the Navy. The undisputed material facts also show that plaintiff's educational expenses have been incurred for a program of study that will lead to plaintiff qualifying for a new trade or business. And so, the Court **GRANTS** the government's motion for summary judgment and **DENIES** plaintiff's cross-motion for summary judgment.

### A. Plaintiff Fails To Show That His Studies Maintained And Improved Required Skills

As an initial matter, the undisputed material facts in this matter show that plaintiff has not met his burden to prove that there is a direct and proximate relationship between his doctoral studies during 2010 and the skills required of him at the time as an engineer for the Navy. And so, the Court must deny plaintiff's motion for summary judgment. RCFC 56; *see e.g.*, *Free-Pacheco v. United States*, 117 Fed. Cl. 228, 292 (2014) ("As a threshold matter, plaintiff has the burden of proving that a section of the Internal Revenue Code applies to him . . . .").

Under the regulations that implement Section 162, educational expenses are deductible if the taxpayer can show that the education maintains or improves the skills required by the taxpayer in his employment, or other trade or business, or meets the express requirements of the taxpayer's employer. Treas. Reg. § 1.162-5(a). But, these regulations also provide that this deduction is not permissible when the expenditures are for education which is part of a program of study being pursued by a taxpayer which will lead to qualifying the taxpayer in a new trade or business. Treas. Reg. § 1.162-5(b)(3)(i).

The United States Tax Court has recognized that this exception applies even though a taxpayer's studies may be required by the taxpayer's employer and the taxpayer does not intend to enter a new field of endeavor. *Bodley*, 56 T.C. at 1360. The United States Tax Court has also recognized that the question of whether education has been undertaken for the purpose of maintaining or improving the skills required by a taxpayer's employer is a question of fact. *Baker v. Comm'r*, 51 T.C. 243, 247 (1968) (holding whether expenditures are for education undertaken primarily for the purpose of "maintaining or improving skills" required by the

taxpayer in his employment must be determined from all the facts and circumstances involved.). And so, the Court first considers whether the undisputed material facts in this case show that plaintiff's 2010 doctoral studies maintained or improved his skills in connection with his employment as a Navy engineer.

The undisputed material facts in this case show that plaintiff has not met his burden to show that his doctoral studies maintained or improved his professional skills. First, in his cross-motion for summary judgment, plaintiff argues that his 2010 doctoral studies maintained or improved his skills, because these studies satisfied the continuing education requirements for registered professional engineers. Pl. Mot. at 3. But, the undisputed material facts show that plaintiff had no obligation to undertake any continuing education to maintain his professional license as an engineer in 2010.

In this regard, it is undisputed that plaintiff received his professional license as an engineer in 2008, and that he was employed as an engineer with the Navy Surface Warfare Center in 2010. Def. Mot. at 3-4; Def. Ex. 1 at 10-11, 14, 18-22; Pl. Mot. at 3. But, as the government argues–and plaintiff appears to concede–plaintiff did not need to pursue any continuing education to maintain his professional license in 2010. Def. Resp. at 4-5, n.7; Pl. Reply at 3. Rather, it is undisputed that plaintiff had no obligation to pursue continuing education to maintain his professional license until after he had held this license for three years. Def. Resp. at 4-5 n.7; Pl. Reply at 3. And so, the undisputed material facts demonstrate that plaintiff did not need to undertake any continuing education to maintain his professional license until 2011–one year after he completed the doctoral studies at issue in this case. Def. Resp. at 4, n.7; Compl. at 1.

The undisputed material facts in this case also do not substantiate plaintiff's argument that his doctoral studies maintained and improved his skills for the practice of the profession of engineering because, he "used the knowledge" gained through those studies in his career and "[t]he underlying principles of [his studies] are the same as those that apply to work [that he] was conducting for the U.S. Navy." Pl. Reply at 1, n.1; Pl. Mot. at 2-3. While plaintiff baldly asserts that his doctoral studies were connected to his employment with the Navy, he points to no facts to demonstrate *how* these studies maintained or improved the skills required of him by the Navy. Compl. at 2; Pl. Mot. at 2; Pl. Reply at 1, n.1.

The Court is, of course, cognizant of plaintiff's *pro se* status. But, the mere assertion of a connection between plaintiff's doctoral studies and the improvement of his skills is simply insufficient to establish an entitlement to a deduction under Section 162. *See, e.g.*, *Pendergraft v. United States*, 94 Fed. Cl. 79, 84-85 (2010) (holding that, where the taxpayer did not maintain the required documentation to verify eligibility for a specific deduction, the taxpayer had not satisfied his burden of proof). And so, the Court must **DENY** plaintiff's cross-motion for summary judgment. RCFC 56.

**B. Plaintiff's Studies Will Lead To Qualifying Him For A New Trade Or Business**

Even if plaintiff could establish that his doctoral studies maintained or improved the professional skills required of him by the Navy, the undisputed material facts in this case also show that plaintiff is not eligible to deduct these expenses as an ordinary and necessary business expense, because plaintiff's doctoral studies will lead to qualifying him for a new trade or business. And so, for the reasons discussed below, the Court **GRANTS** the government's motion for summary judgment.

As discussed above, Treasury Regulation § 1.162-5(b) provides that the deduction for an ordinary and necessary business expense is not available when the expenses to be deducted are for education which is part of a program of study being pursued by the taxpayer which will lead to qualifying the taxpayer in a new trade or business. Treas. Reg. § 1.162-5(b)(3)(i). And so, if the undisputed material facts in this case show that the educational expenses that plaintiff seeks to deduct are for education which is part of a program of study which will lead to qualifying plaintiff in a new trade or business, he may not deduct these expenses. *Id.*

The Court's consideration of whether plaintiff's doctoral studies will qualify him for a new trade or business is an objective inquiry. *See, e.g.*, *Vetrick*, 628 F.2d at 886. And so, the Court compares the tasks and activities that plaintiff was able to perform before completing the education at issue with the tasks and activities that plaintiff was qualified to perform after completing these studies. *Id.*; *see also Burnstein v. Comm'r*, 66 T.C. 492, 495 (1976); *Bodley*, 56 T.C. at 1360.

In its motion for summary judgment, the government persuasively argues that plaintiff's doctoral studies will lead to qualifying him as a university professor. Def. Mot. at 11-13.

Specifically, the government argues that plaintiff's doctoral studies would satisfy a significant requirement for a new career as a university professor, because many universities require that professors in their employ hold a Ph.D. degree. Def. Mot. at 11-12. To support this argument, the government points to occupational information from the United States Department of Labor which indicates that, commonly, postsecondary teachers must hold a Ph.D. degree. *Id.* at 11-12 (citing *Postsecondary Teachers*, U.S. DEP'T OF LABOR, OCCUPATIONAL OUTLOOK HANDBOOK 2016-17 EDITION (Dec. 17, 2015). In addition, the government points to a statement by MIT which indicates that the university's Ph.D. program is a gateway for enrolled students to secure teaching positions with top universities. *Id.* at 12 (citing *Graduate Degrees*, MIT CIVIL AND ENVIRONMENTAL ENGINEERING, http://cee.mit.edu/graduate/graduate-degree/ (last visited October 4, 2016); *Massachusetts Institute of Technology Faculty Positions in the Department of Civil and Environmental Engineering*, MIT SCHOOL OF ENGINEERING, https://school-of-engineering-faculty-search.mit.edu/cee-search/ (last visited October 4, 2016)).

Plaintiff correctly counters in his cross-motion for summary judgment that holding a Ph.D. degree does not necessarily indicate that an individual intends to become a university professor. Pl. Mot. at 6. Plaintiff is also correct in observing that holding a Ph.D. degree alone is insufficient to qualify for employment as a university professor. *Id.*

But, the question presented here is whether plaintiff's doctoral studies are the kind of studies which *will lead to qualifying him* to become a university professor–not whether plaintiff actually intends to begin a new career in academia. *See Meeks v. Comm'r*, 2000 U.S. App. LEXIS 2819, at *2 (9th Cir. Feb. 22, 2000); *see also Jungreis v. Comm'r*, 55 T.C. 581, 590-91 (1971) (recognizing that a Ph.D. is a necessary qualification for a person seeking to pursue a career as a professor). There is no dispute in this case that holding a Ph.D. degree is an important qualification for becoming a university professor. Def. Mot. at 11-12; Pl. Mot at 5. And so, there can be no genuine dispute that plaintiff would have objectively fulfilled a significant requirement for becoming a university professor, if he had completed his doctoral studies. *See Bodley*, 56 T.C. at 1361 ("Even if an individual taking a course which both qualifies him for a new profession and improves his skills and earning power in his current field of endeavor does not intend to enter the new profession, his purpose and intention may change. He may later decide to enter the new profession.").

In addition, the fact that plaintiff would also need to meet other requirements to pursue a career in academia is also not germane to the Court's inquiry regarding whether plaintiff's studies will lead to qualifying him for a new trade or business. The fact that plaintiff's doctoral studies *could* lead to qualifying him for a job in a new field is sufficient to find that plaintiff is not entitled to a tax deduction under Section 162. *See Meeks*, 2000 U.S. App. LEXIS 2819, at *2 ("The fact that the education *could* lead (if the entire program of study was completed) to qualifying him for a job [in a new field] is enough." (emphasis original)); *Sharon v. Comm'r*, 591 F.2d 1273, 1275 (9th Cir. 1978) (per curiam).

Again, the undisputed material facts in this case make clear that a Ph.D. degree is an important qualification for becoming a university professor. Because plaintiff's doctoral studies could have objectively qualified him to become as a university professor, he may not seek a deduction for these expenses and an ordinary and necessary business expense under Section 162.

As a final matter, the government also argues with less persuasion that plaintiff's doctoral studies will lead to qualifying plaintiff for a new trade or business as a licensed structural engineer. Def. Mot. at 13-15. To support this argument, the government maintains that plaintiff's studies would have prepared him to take a structural engineering exam. Def. Mot. at 15; Def. Resp. at 3 n.4.

While it is without dispute that plaintiff was not a structural engineer in 2010, the undisputed material facts in this case indicate that plaintiff already had the necessary education and work experience to take the structural engineering examination before he undertook the doctoral studies at issue. Pl. Mot. at 5; Def. Ex. 1 at 35. The parties do not dispute that plaintiff performed structural engineering work for the Naval Sea Systems Command in 2007. Def. Mot. at 3; Def. Ex. 1 at 14. It is also undisputed that plaintiff became a licensed professional engineer in the State of New York in 2008. Def. Mot. at 4-5; Def Ex. 1 at 18. Nor is it disputed that, in 2009, plaintiff began work as an engineer at the Navy Surface Warfare Center, where he focused on how batteries in submarines withstood shocks and vibrational disturbances. Def. Mot. at 3-5; Def. Ex. 1 at 10-11, 14, 45-46. And so, the government's argument that plaintiff's doctoral studies will lead to qualifying him as a structural engineer finds less support in the factual record.

Nonetheless, because the factual record does demonstrate that plaintiff's doctoral studies in 2010 will lead to qualifying him as a university professor, the undisputed material facts in this

matter show that plaintiff may not deduct the expenses for this education under Section 162. And so, for this reason, the Court must **GRANT** the government's motion for summary judgment. RCFC 56.

## V. CONCLUSION

In sum, the undisputed material facts in this matter show that plaintiff has not shown that his doctoral studies in 2010 maintained or improved the professional skills required of him by the Navy. And so, plaintiff has not met his burden to establish that he is eligible to deduct the expenses associate with these studies as an ordinary and necessary business expense under Section 162. I.R.C. § 162; Treas. Reg. § 1.162-5(a).

The undisputed material facts also show that plaintiff's doctoral studies will lead to his qualification in a new trade or business as a university professor, making these expenses ineligible for deduction as an ordinary and necessary business expense under Section 162.

And so, for the foregoing reasons, the Court:

1. **GRANTS** the government's motion for summary judgment;
2. **DENIES** plaintiff's cross-motion for summary judgment; and
3. **DISMISSES** the complaint.

The Clerk's Office is directed to **ENTER** final judgment in favor of the government, **DISMISSING** the complaint.

Each party shall bear its own costs.

**IT IS SO ORDERED.**

LYDIA KAY GRIGGSBY
Judge